**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PRESTON WATKINS,

                Plaintiff,

        v.                                  Case No. C-1-03-033

FORD MOTOR COMPANY,

                Defendant.

## ORDER

      This matter is before the Court upon defendant's motion for summary judgment (doc. 66), plaintiff's opposing memorandum (doc. 72), and defendant's reply (doc. 80).  The parties have filed proposed findings of fact and conclusions of law, which the opposing side has highlighted as true, false, or irrelevant (docs. 74, 79).

## I. Introduction

      Plaintiff Preston Watkins initially filed this lawsuit in state court against his then employer, Ford Motor Company. Defendant removed the lawsuit to this court based on the court's diversity jurisdiction. Plaintiff brought claims for race and age discrimination in violation of O.R.C. § 4112.02 arising out of defendant's failure to promote plaintiff for a period of 28 years prior to April 1, 2002 [Counts I, II]. Plaintiff brought an additional claim for violation of the Ohio public policy against wrongful discharge [Count III].  Defendant moved for summary judgment on the claims.  The motion was denied as to plaintiff's claims for race and age discrimination.

1

Shortly after the Court issued its summary judgment ruling, plaintiff filed another complaint in state court asserting claims arising out of the termination of his employment. The claims are for retaliation, age discrimination, disability discrimination, and race discrimination in violation of Ohio Rev. Code § 4112.02 and for breach of Ohio public policy. Defendant removed the second action to this court, and the two actions were consolidated under the original case number. Defendant now moves for summary judgment in its favor on the claims presented in the second lawsuit. Plaintiff does not oppose the motion with respect to his disability discrimination claim.

## II. Undisputed facts

1. Plaintiff was employed at Ford's transmission plant in Sharonville, Ohio, from 1974 to April 13, 2004.

2. Plaintiff filed a lawsuit against Ford based on its failure to promote him.

3. In June 2003, as part of the discovery process for plaintiff's failure to promote lawsuit, plaintiff produced to defendant copies of eight Leadership Development Employee Profiles, which contain information such as salary grade and performance information.

4. According to the Supervisor of Salaried Personnel, Robert Brooks, the employee profiles are all organized together in a book that is kept in a file cabinet within the salaried personnel office.

5.  During plaintiff's December 10, 2003 deposition taken in connection with his failure to promote lawsuit, plaintiff testified that "way before" filing his EEOC charge and/or his first complaint against Ford, he entered the Sharonville Plant, admittedly examined the binder of employee profiles, went through the binder, and made copies of his profile and those of six Caucasian employees who worked in his department and one Caucasian employee who worked in Human Resources. Plaintiff removed the copies from the Plant.

6.  Although the copies of the profiles were produced to defendant in June 2003, plaintiff was not terminated until April 13, 2004.

7.  When he gave his deposition in December 2003, plaintiff was on an approved medical leave of absence, which he had begun on October 3, 2003.

8.  Plaintiff returned to work some time after January 15, 2004. By that time, defendant's management had known all the facts related to any alleged misconduct by plaintiff for more than one month.

9.  Plaintiff went back on medical leave on or about January 31, 2004.

10.  Fifty-one days after plaintiff's deposition, Brooks made a written recommendation to Gerry Taylor, the Personnel Relations Associate for the Division, that plaintiff should be discharged. Taylor had the ultimate authority to terminate plaintiff's employment.

11.  Taylor received Brooks' January 30, 2004 written recommendation, and he reviewed a database of disciplinary cases to determine if there were any comparators. The other situations Taylor alleged were comparable involved the "disclosure of confidential documents."

12.  Taylor signed off on plaintiff's termination in early February 2004.

3

13.     Plaintiff was terminated upon his return to work from medical leave on April 13, 2004,

which was sixteen months after he had filed his first complaint against Ford.

### III. Motion for summary judgment

Defendant assumes for summary judgment purposes that plaintiff can establish a prima

facie case of age and race discrimination.  Defendant contends, however, that plaintiff cannot

show that its legitimate, non-discriminatory reason for plaintiff's termination, i.e., plaintiff

committed a breach of trust by availing himself of confidential salaried personnel profiles,

making copies of them, and removing the copies from the Plant,  is pretextual since he admits the

purported underlying reason for his discharge.  Defendant further argues that plaintiff cannot

establish a cause of action for retaliation in violation of Ohio Rev. Code § 4112.02 because he

cannot show a causal connection between his alleged protected activity and the termination of his

employment.  Defendant argues there is no evidence that Ford's knowledge of plaintiff's lawsuit

in any way affected its decision to terminate plaintiff's employment and plaintiff cannot show that

defendant's articulated reason for terminating his employment is a pretext for retaliation.

Defendant also contends that since plaintiff's discrimination and retaliation claims fail, his public

policy claim based on the alleged discrimination and retaliation likewise must fail. Finally,

defendant argues that even if plaintiff could establish liability, he is not entitled to front or back

pay because he has failed to mitigate his damages.

### IV. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination

of an action.  This Court may only grant summary judgment as a matter of law when the moving

party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.* at 249 (citing *Cities Serv.*,  391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249.

## V. Applicable law

### A. Retaliation

Ohio Rev. Code § 4112.02 makes it illegal

(I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under §§ 4112.01 to 4112.07 of the Revised Code.

Federal case law interpreting Title VII generally applies to cases involving alleged violations of O.R.C. § 4112.02.  *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil*

*Rights Comm.,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981). To establish a prima facie case of retaliation under O.R.C. § 4112.02, plaintiff must demonstrate that (1) he engaged in activity protected under the statute; (2) the exercise of his civil rights was known by defendant; (3) defendant thereafter took adverse employment action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse employment action. *See Ford v. Gen. Motors Co.,* 305 F.3d 545, 552-53 (6th Cir. 2002); *Thatcher v. Goodwill Industries of Akron,* 117 Ohio App.3d 525, 534-35, 690 N.E.2d 1320, 1326 (1997). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

To establish a causal connection, plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had plaintiff not engaged in protected activity. *Id.* Evidence that the defendant treated the plaintiff differently from similarly-situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. *Id.* (citing *Moon v. Transp. Drivers, Inc.,* 836 F.2d 226, 230 (6th Cir. 1987)); *see also Ford,* 305 F.3d at 554-55. The Sixth Circuit has stated that while "'temporal proximity alone will not support an inference in the face of compelling evidence' to the contrary, 'the proximity in time between protected activity and adverse employment action may give rise to an inference of a causal connection.'" *Ford,* 305 F.3d at 554-55 (quoting *Moon,* 836 F.2d at 229); *see also DiCarlo v. Potter,* 358 F.3d 408, 421 (6th Cir. 2004) ("this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of

6

retaliation to arise.")

Once the plaintiff establishes a prima facie case of retaliation, the burden is on the defendant to articulate a legitimate reason for the adverse action, which plaintiff may rebut by demonstrating that the articulated reason was a mere pretext for retaliation. ***Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.,*** 783 F.2d 50, 54 (6th Cir. 1986).

### B. Age and race discrimination

Ohio courts apply the evidentiary standards and guidelines established in ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 93 S.Ct. 1817 (1973) in employment discrimination cases involving race and age. ***Plumbers & Steamfitters***, 66 Ohio St.2d at 196-97, 421 N.E.2d at 131. A plaintiff claiming discrimination under federal or Ohio law may establish a prima facie case by introducing either direct or circumstantial evidence that the defendant discharged the plaintiff because of his age and/or race. ***See Manzer v. Diamond Shamrock Chemicals Co.,*** 29 F.3d 1078, 1081 (6th Cir. 1994). Plaintiff may establish a prima facie case of age or race discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost or not gained; and 4) his position was filled by someone outside of the protected class. ***Id.*** (citing ***McDonnell Douglas,*** 411 U.S. at 802, 93 S.Ct. at 1824; ***Gagne v. Northwestern National Insurance Co.,*** 881 F.2d 309, 313 (6th Cir. 1989)).

Plaintiff can establish the fourth prong of his prima facie case of age discrimination by showing that he was replaced by a substantially younger individual, even if that individual is within the protected class. ***O'Connor v. Consolidated Coin Caterers Corporation,*** 517 U.S. 308, 313, 116 S.Ct. 1307, 1310 (1996); ***Coryell v. Bank One Trust Company N.A.,*** 101 Ohio St.3d

175, 180, 803 N.E.2d 781, 787 (2004). Plaintiff may also establish the fourth prong of a prima facie case of age or race discrimination by showing that he was treated less favorably than a similarly-situated employee outside of his protected class. *Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002). In such a case, plaintiff must prove that all relevant aspects of his employment situation were similar to those of the employee with whom he seeks to compare himself. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for that conduct. *Id.* at 352 (quoting *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir. 1992); *Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir. 2000)). Precise equivalence in culpability between employees is not required. *Smith,* 220 F.3d at 762 (citing *Harrison v. Metropolitan Government,* 80 F.3d 1107, 1115 (6th Cir. 1996)). An employer's more severe treatment of more egregious circumstances cannot give rise to an inference of discrimination sufficient to support a prima facie case. *Clayton,* 281 F.3d at 612.

The plaintiff's burden at the prima facie stage of the proceedings is not onerous, but "merely serves to raise a rebuttable presumption of discrimination by 'eliminat[ing] the most common nondiscriminatory reasons for the [employer's treatment of the plaintiff].'" *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (2000) (citing *Hollins v. Atlantic Co.,* 188 F.3d 652, 659 (6th Cir. 1999) (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253-54, 101 S.Ct. 1089 (1981)).

The employer is entitled to summary judgment if the plaintiff does not establish a prima

facie case. If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. ***McDonnell Douglas,*** 411 U.S. at 802, 93 S.Ct. at 1824. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. ***Id.*** at 804, 93 S.Ct. at 1825.

The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the discharge; or 3) the reasons were insufficient to warrant a discharge. ***Manzer,*** 29 F.3d at 1084. The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, i.e., that the reason is factually false. ***Id.*** The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. ***Id.*** If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. ***Id.*** For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. ***Id.***

An employer's business judgment is not an absolute defense to unlawful discrimination. ***Wexler v. White's Furniture, Inc***., 317 F.3d 564, 576 (6th Cir. 2003). The Court in ***Wexler***

addressed the extent to which the reasonableness of an employer's decision may be considered:

> [T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation. *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir.1998)) (holding that, in evaluating a proffered nondiscriminatory basis for an employment action, courts should inquire into 'whether the employer made a *reasonably informed and considered decision* before taking an adverse employment action') (emphasis added); *In re Lewis,* 845 F.2d 624, 633 (6th Cir.1988) ('Sears does not have to establish that the basis on which it acted in firing Lewis was *sound;* rather, Lewis has the burden of demonstrating that Sears' stated reasons are pretextual. One way for Lewis to do this is to show that Sears' asserted business judgment was so ridden with error that defendant could not honestly have relied upon it.') (emphasis in original) (internal quotation marks omitted).

*Id.*

### C. Public Policy Violation

In *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), the Ohio Supreme Court recognized the tort of wrongful discharge in violation of public policy.  The tort requires four elements: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653, 657-58 (1995)(citing H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-99).  The clarity and jeopardy elements are questions of law to be determined by the court, while the causation and

10

overriding justification elements are questions of fact to be left to the jury. *Id.* at 70, 652 N.E.2d at 658.

## VI. Opinion

### A. Retaliation claim

Defendant argues that plaintiff cannot establish a cause of action for retaliation in violation of Ohio Rev. Code § 4112.02 because he cannot show a causal connection between his alleged protected activity and the termination of his employment. Defendant alleges that the sixteen-month lapse of time between the filing of plaintiff's first lawsuit and his termination refutes any argument that a causal connection exists between the two. Defendant further alleges that there is no evidence that Ford's knowledge of the lawsuit in any way affected its decision to terminate his employment and plaintiff cannot show that defendant's articulated reason for terminating his employment is a pretext for retaliation.

In response to defendant's arguments and in support of his retaliation claim, plaintiff argues that he need not establish either the causation element of a retaliation claim or pretext because defendant's articulated reason for terminating plaintiff "was retaliation." Plaintiff attempts to portray his actions of copying the personnel information and disclosing it to his attorney as protected activity. To buttress his position, plaintiff alleges that he found the confidential personnel profiles "left out in plain sight in a common area of [the] salaried personnel office;" he "believed [the profiles] were evidence of discrimination;" and nothing on or in the profile book was marked confidential. Plaintiff alleges that his "conduct in preserving that evidence and providing it to his attorneys was protected activity." Plaintiff's opposing memorandum, p. 9. While plaintiff admits that he did not have permission to copy the profiles, he

11

alleges that under the specific facts of this case, providing "innocently discovered documents" that he believed to be evidence of unlawful discrimination to his attorney was protected activity and discharging him for this protected activity was unlawful retaliation.

In reply, defendant argues that plaintiff's "copying and theft of confidential Ford documents" does not constitute protected activity.  Defendant further contends that the timing of plaintiff's termination is not evidence of retaliation since the 51 days between the date defendant learned of plaintiff's alleged misconduct and the date it decided to terminate plaintiff's employment for breach of trust was not an unreasonable period of time to complete its investigation into the matter.

The Court finds untenable plaintiff's position that his copying and disclosure of the personnel information is activity that is protected under Ohio's anti-retaliation law.  Accepting as true his allegations that he found the profiles in a book that had been left out in the open, the papers were not marked as confidential, and he disclosed the profiles only to his counsel, his conduct cannot reasonably be construed as protected activity.  As noted by defendant, if the Court were to adopt plaintiff's argument that such conduct is protected activity, "plaintiffs everywhere would be entitled, under the umbrella of protected activity, to steal company information and, so long as they give the information to their lawyer, not only be able to avoid disciplinary action by their employer, but also be empowered to successfully maintain a claim against their employer if adverse action is taken for the misconduct."  *See* defendant's reply brief, p. 4.  This result finds no support in Ohio law and is not one the Court is willing to countenance absent compelling authority requiring it to do so.  Far from being entitled to protection under the law, plaintiff's conduct was counterproductive, wrongful, and a breach of his employer's trust.

12

The parties have cited cases from other federal courts in support of their positions on the retaliation claim.  The case cited by plaintiff in support of his argument that his conduct was protected activity, ***Kempcke v. Monsanto Co.,*** 132 F.3d 442, 445-47 (8th Cir. 1998), is clearly distinguishable from the present case.  In ***Kempcke***, the court found that the documents had been "innocently acquired," i.e., the plaintiff had discovered them in a computer assigned to him by defendant. ***Id.*** at 446.  The court likened the situation to an employee being inadvertently copied on an internal memorandum or discovering a document mistakenly left in an office copier.  The court stated that "when documents have been innocently acquired, and not subsequently misused, there has not been the kind of employee misconduct that would justify withdrawing otherwise appropriate § 623(d) protection." ***Id.***  The court found a reasonable jury could determine that the plaintiff's conduct in delivering the documents to his attorney and telling his employer to deal with the attorney regarding their return was protected activity.

In this case, a reasonable jury could not determine that the documents were "innocently acquired."  Although plaintiff may have inadvertently come upon the profile binder, he went beyond reading what was purportedly in open view and instead looked through the profiles to find information, copied the profiles even though he admittedly did not have the authority to do so, and provided copies to his attorney.  Such conduct is much more akin to that of the plaintiff in the Ninth Circuit case cited by defendant, ***O'Day v. McDonnell Douglas Helicopter Co.,*** 79 F.3d 756 (9th Cir. 1996).  ***O'Day*** involved a plaintiff who, after being denied a promotion, had rummaged through a supervisor's desk and found documents in a file "that was clearly not meant for general inspection" in that it was kept in a closed drawer in the supervisor's desk, it contained information about sensitive personnel matters, and it was prominently marked

13

"personal/sensitive."  Plaintiff then photocopied the documents and showed them to another

employee who had been slated for lay-off.  *Id.* at 758.  One month later, the plaintiff himself was

laid off as part of a general workforce reduction.  After the plaintiff filed suit and the defendant

learned of plaintiff's misconduct during discovery, the defendant immediately converted

plaintiff's "layoff" status to "terminated."  The plaintiff claimed that his conduct was protected

activity under the ADEA's anti-retaliation provision because his purpose was to preserve

evidence for a future lawsuit against the company.  The court determined that the employee's

conduct was not protected because the plaintiff "had committed a serious breach of his

employer's trust, not only in rummaging through his supervisor's office for confidential

documents, but also in copying those documents and showing them to a co-worker."  *Id.* at 763.

The court stated that it was "loathe to provide employees an incentive to rifle through confidential

files looking for evidence that might come in handy later in litigation.  The opposition clause [of

the ADEA] protects reasonable attempts to contest an employer's discriminatory practices; it is

not an insurance policy, a license to flaunt company rules or an invitation to dishonest behavior."

*Id.* at 763-64.

　　　　Like the plaintiff in *O'Day,* plaintiff here committed a serious breach of trust by looking

through defendant's files and copying documents that obviously were not intended for general

inspection and then providing those documents to his attorneys.  The fact that plaintiff

purportedly obtained the documents for use in a lawsuit does not excuse his conduct, particularly

since plaintiff could have sought that information by securing counsel and going through the

proper legal channels.  A reasonable jury could not find plaintiff engaged in a legitimate means of

preserving evidence by copying sensitive employee information maintained by his employer that

14

had not been provided to him and removing the copies from defendant's property. Such conduct cannot be sanctioned as protected activity as a matter of law. Thus, a reasonable jury could not find that defendant violated Ohio's anti-retaliation law by firing plaintiff for that conduct.

Plaintiff goes on to argue that "[e]ven if this Court were to conclude as a matter of law Plaintiff's conduct in giving documents to his attorneys was not protected activity, the record contains sufficient evidence to establish causation and pretext." Plaintiff's argument is difficult to follow, but it appears plaintiff is alleging a causal connection between his filing of the initial lawsuit, which clearly constitutes protected activity, and the actual decision to terminate him. Plaintiff notes that the written recommendation to fire him was made on January 30, 2004 (*see* Brooks depo. exh. 8), thereby suggesting that the temporal proximity between the filing of the lawsuit and the adverse employment decision is actually closer than it appears, and he also notes that the decision was made at least two or three months before it was communicated (which was after plaintiff had returned from medical leave). Plaintiff also alleges that Brooks admitted in his deposition that he considered the fact that plaintiff had copied the files as support for his discrimination claims when he made the recommendation to fire plaintiff.

The evidence plaintiff has produced is not sufficient to establish a causal connection between his filing of the initial lawsuit and his discharge sixteen months later. Even if one looks to the date of the recommendation to discharge plaintiff in order to determine whether there is sufficient evidence of a causal connection, the one-year time lapse between the filing of the lawsuit and the recommendation is not enough, standing alone, to establish a causal connection between the two events. Nor does the other evidence offered by plaintiff suggest that there may have been a causal connection between the filing of plaintiff's lawsuit and his discharge. Plaintiff

15

relies on the deposition testimony of Brooks, who testified that he "probably thought" after completing his investigation that plaintiff had copied the files for use in his lawsuit, but he was not sure that influenced him. Brooks depo., v. 2, pp. 98-99. This testimony does not permit an inference that Brooks took into account the fact that plaintiff had filed a lawsuit against Ford, as opposed to the fact that plaintiff had copied and disclosed Ford's personnel information without authorization to do so, when making his discharge recommendation.

Because plaintiff has not come forward with sufficient evidence to establish a causal connection between any protected activity and his termination, it is not necessary to address the issue of pretext in connection with his retaliation claim. The Court will address the question of whether there is sufficient evidence of pretext in connection with plaintiff's age and race discrimination claims.

## B. Age and race discrimination claims

Plaintiff contends that the same analysis that applies to his retaliation claim is applicable to his discrimination claims. Plaintiff argues that if a jury finds that his conduct in copying what he believed to be evidence of discrimination and providing it to his attorneys was protected activity, then the jury could properly reject defendant's proffered reason as a legitimate basis for discharging him. Plaintiff avers that defendant's suggestion that he cannot establish pretext because he does not dispute that he copied the profiles is contrary to established Sixth Circuit authority. Plaintiff argues that the record contains substantial evidence to cast doubt on the credibility of defendant's proffered reason as the true basis for his discharge. Plaintiff alleges that defendant had an incentive to discharge him given that he had already sued the company for age and race discrimination, and the record contains evidence that defendant did not discharge at least

16

one Caucasian employee who had engaged in more serious misconduct by actually disclosing confidential information to a third party, who in turn put it on the internet.

Defendant does not dispute for summary judgment purposes that plaintiff can establish a prima facie case of age and race discrimination. Rather, defendant argues there is no evidence of pretext.

After a careful review of the record, the Court finds that defendant is entitled to summary judgment on plaintiff's claims for age and race discrimination based on his termination. Plaintiff has not come forward with sufficient evidence to permit a reasonable jury to determine that the reason articulated by defendant for terminating plaintiff's employment is pretextual. First, plaintiff has admitted that he engaged in the conduct asserted by defendant as the reason for his termination, so he cannot show that the articulated reason had no basis in fact. Second, a reasonable jury could not determine that the proffered reason was insufficient to motivate the discharge. Third, although plaintiff claims he can establish pretext under the second method of proof outlined in *Manzer,* i.e., the proffered reason did not actually motivate his discharge, plaintiff has not come forward with evidence to support a finding to this effect. Plaintiff questions why defendant did not fire him in June 2003 when the employee profiles were produced during discovery, but the time lag carries no weight in light of defendant's unrefuted testimony that it had no way of knowing at that time how the documents had been obtained and it remained unaware of that information until it took plaintiff's deposition on December 10, 2003. Plaintiff also asserts that defendant "clearly did not need 51 days to complete" its investigation of the incident (plaintiff's opposing memorandum, p. 16), but certainly that is not an unreasonable length of time for a large company to complete an investigation into serious employee misconduct

17

and to determine the appropriate disciplinary action. Therefore, the length of time it took defendant to complete its investigation and to make the decision to discharge plaintiff does not cast doubt on the credibility of defendant's explanation.

As further evidence of pretext, plaintiff alleges that the record contains evidence that defendant "has not discharged employees who have engaged in far more serious acts involving public disclosure of confidential documents" and who "were clearly not engaging in protected activity." Plaintiff's opposing memorandum, p. 17. Plaintiff specifically contends that his situation differs from that of a terminated Caucasian employee whom Taylor considered to be a comparator because that individual had disclosed confidential documents on the internet, whereas plaintiff disclosed the profiles only to his attorneys. However, the fact that defendant may have considered the purportedly more egregious conduct of another employee and the wrongful conduct of plaintiff to merit the same disciplinary action does not support a finding that defendant's articulated reason for plaintiff's discharge is pretextual. Certainly in any given workplace there are a variety of infractions that may warrant discharge, with some of those infractions qualifying as much more egregious than others on the spectrum. An employer's meting out the same punishment for such infractions is not competent evidence of pretext.

As further evidence of pretext, plaintiff seeks to compare his situation to that of a Caucasian employee whom Taylor deemed to be a comparator. Plaintiff avers that the employee engaged in more serious misconduct by actually disclosing confidential product information to a friend who then posted it on the internet, but the employee was not terminated and instead received a four-week suspension. A review of the disciplinary report for that individual, however, does not support a finding that the employee was similarly-situated to plaintiff. *See*

Exh. to plaintiff's opposing memorandum, p. PAW1 2139.  There is no indication as to what

position the employee held; who the individual's supervisor was; who made the decision to

suspend the employee; and how the employee acquired the information he shared with a "friend

outside of Ford," which consisted of "confidential photos of Mustang Cobra R prior to official

release but after public release." More importantly, there is no indication that the employee held a

position of trust and "willfully violated the basic trust that was and is inherent to the position he

was occupying at the time," as defendant found plaintiff had done in his capacity as Plant

Security Supervisor.  *See* Exh. to plaintiff's opposing memorandum, p. PAW1 2126.

Plaintiff points to another incident as demonstrating pretext in the context of his retaliation

claim.  That incident may not be relevant to plaintiff's discrimination claims, but the Court will

nonetheless address it in the event plaintiff deems the incident to be evidence of pretext for age

and race discrimination.  Plaintiff claims that the decision-makers in his case did not discharge

the Sharonville Plant Manager, Tom Thieman, after he had engaged in a physical altercation with

plaintiff's former boss, John Abbey.  However, the deposition testimony of Taylor that plaintiff

cites in support of his allegation does not establish that the two men had what could accurately be

characterized as a "physical altercation," and the conduct described bears no similarity to

plaintiff's misconduct.  *See* Taylor depo., pp. 29-31.

In short, plaintiff has not come forward with sufficient evidence to create a genuine issue

of material fact as to whether the reason defendant has articulated for his discharge is pretextual.

Defendant is therefore entitled to summary judgment on plaintiff's claims for age and race

discrimination.

**C. Public policy claim**

Because plaintiff has not produced sufficient evidence to establish his underlying

discrimination and retaliation claims, defendant is entitled to summary judgment on plaintiff's

public policy claim.

**VII. Conclusion**

In accordance with the foregoing, defendant's motion for summary judgment is

**GRANTED** as to plaintiff's claims arising from the termination of his employment.  This case

will proceed to trial on the failure to promote claims pursuant to the schedule established by the

Court.

**IT IS SO ORDERED.**


S/ Herman J. Weber
                        HERMAN J. WEBER
            SENIOR JUDGE, UNITED STATES DISTRICT COURT


J:\HJWA\03-033ageretlPUB.wpd

20